IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| APRIL M. WISH, | ) | CASE NO. 5:14 CV 2478 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by April M. Wish under 42 U.S.C. § 405(g) for judicial review

of the final decision of the Commissioner of Social Security denying her application for

disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of

the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have briefed

---

[1] ECF # 12. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 11.

their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument.

## B.  Background facts and decision of the Administrative Law Judge ("ALJ")

Wish, who was 33 years old at the time of the administrative hearing,[10] graduated high school and completed a medical assistant course at Remington College in 2006.[11] She is married with three children,[12] and has previously worked as a sales clerk, daycare worker, and veterinary technician.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Wish had the following severe impairments: fibromyalgia, obesity, and a bipolar disorder.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Wish's residual functional capacity ("RFC"):

---

[7] ECF # 13 (Wish's brief); ECF # 21 (Commissioner's brief); ECF # 22 (Wish's reply brief).

[8] ECF # 16 (Wish's charts); ECF # 21-1 (Commissioner's charts).

[9] ECF # 13-1 (Wish's fact sheet).

[10] *Id.*

[11] Transcript ("Tr.") at 38 and 40.

[12] *Id* at 38.

[13] *Id.* at 27.

[14] *Id.* at 17.

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except that the claimant will require a sit/stand option in the performance of her work. Mentally, the claimant is limited to simple, routine, repetitive tasks that are not performed at a high production pace. The claimant cannot perform tasks requiring her to engage in arbitration, mediation, or negotiation.[15]

The ALJ decided that this RFC precluded Wish from performing her past relevant work as a sales clerk, a daycare worker, and a veterinary technician.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Wish could perform.[17] The ALJ, therefore, found Wish not under a disability.[18]

**C.    Issues on judicial review and decision**

Wish asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Wish presents the following issues for judicial review:

- Whether the ALJ's finding lacks substantial evidence in that plaintiff's impairments did not meet or equal listing section 14.09(D).

- Whether the ALJ erred in giving "lesser weight" to Dr. Kuchynski's November 3, 2011 opinion.

---

[15] *Id.* at 19.

[16] *Id.* at 27.

[17] *Id.* at 28.

[18] *Id.*

- Whether the RFC lacks support of substantial evidence as the ALJ did not include in the RFC any limitations related to difficulties maintaining concentration, persistence and pace.

- Whether the ALJ's RFC lacks the support of substantial evidence, as the RFC does not contain important functional limitations set forth in the treating physician's report.

- Whether the ALJ's hypothetical question that forms the basis for the denial of the claim does not accurately portray the plaintiff's limitations is deficient as a matter of law, and is not based on substantial evidence.

For the reasons that follow, I will conclude that the ALJ's finding is hereby reversed and the matter remanded for further proceedings consistent with this opinion.

## Analysis

### A.    Standards of review

#### 1.    *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

-4-

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

---

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[29] *Id.* at 535.

-6-

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on

---

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

[35] *Id.*

the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[39] *Id.* at 375-76.

[40] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[43] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

[49] *Id.*

and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

**B.      Application of standard**

This case once again involves the well-established rule concerning the treatment of treating source opinions.

Essentially, Wish contends first that the ALJ erred in assigning "little weight" to the November 3, 2011 opinion of Dr. Marie Kuchynski, MD, Wish's treating rheumatologist, because it was purportedly inconsistent with her December 19, 2011 answer to a state agency

---

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

questionnaire.[59]  Wish further argues that the ALJ also erred in not sufficiently articulating his reasons for finding that Wish's fibromyalgia does not meet or equal the listing at Section 14.09 addressing inflammatory arthritis.[60]  Wish also raises two additional points going to the hypothetical questions posed to the VE.[61]

However, because for the reasons stated below the decision in this matter will be reversed upon consideration of the first ground set out above, it will not be necessary to here address either the other major argument or the secondary issues in great depth.

Initially I note that Wish's treatment relationship with Dr. Kuchynski was acknowledged by the ALJ to be a treating relationship.[62]  Further, there does not appear to be any dispute over Dr. Kuchynski's diagnosis of Wish as having fibromyalgia. Indeed, the ALJ's opinion, in its chronological review of the medical evidence, explicitly cites to Dr. Kuchynski's treatment notes from December 3, 2010;[63] February 21, 2011;[64] October, 2011;[65]

---

[59] ECF # 13 at 16-18.

[60] *Id*. at 19-20.

[61] *Id*. at 20-22.

[62] Tr. at 26.

[63] *Id*. at 22 (citing record).

[64] *Id*. at 22-23 (citing record).

[65] *Id*. at 24 (citing record).

December 19, 2011;[66] and September 28, 2012;[67] all of which notes either document that Dr. Kuchynski made specific fibromyalgia trigger points findings in examining Wish, or offered opinions as to limitations imposed by "claimant's fibromyalgia impairment."[68]

In that context, the ALJ noted that within a one-month period in 2011 Dr. Kuchynski gave two medical opinions as to how Wish's fibromyalgia effected her ability to function at work.

First, in a medical opinion on November 3, 2011, Dr. Kuchynski stated that Wish's fibromyalgia functionally limited her to walking one block at a time; to sitting or standing/ walking for 1.25 hours at a time, and to less than two hours in total, apiece, in an eight-hour work day; to requiring unscheduled breaks; to being limited to occasionally lifting 10 pounds, and to limited manipulative activities; to never being able to perform postural activities or engage in even low-stress work; and to needing over 4 absences from work per month.[69]

But, next month, on December 6, 2011, Dr. Kuchynski received a form from the state Rehabilitation Services Commission asking Dr. Kuchynski, among other things, to "please describe any limitations [Wish's] impairment imposes on the ability to perform sustained

---

[66] *Id*. (citing record).

[67] *Id*. at 26 (citing record).

[68] *Id*. at 24, 26.

[69] *Id*. at 456-59.

work activities."[70] In her answer, which was signed on December 19, 2011, Dr. Kuchynski answered this question as follows: "No lifting, > 10 lbs., no bending, stooping, kneeling."[71]

The ALJ began the analysis of these two opinions by initially commenting that in the later December opinion Dr. Kuchynski gave only the few limitations stated above, "with no further limitations in the claimant's work-related functioning," and noting further that in the later opinion Dr. Kuchynski "did not restate those limitations she had provided in a medical source statement of November 3, 2011...."[72] He then proceeded to assign weight to the two opinions, giving the more extensive limitation of the November opinion "little weight" and the December opinion "some weight" for two reasons:

(1) those November limitations were "lacking in record and other credible support" and Dr. Kuchynski did not later reiterate them one month later in December;[73] and,

(2) the December limitations were "consistent with the substantial evidence of record and consistent with a residual functional capacity for sedentary work, as determined herein."[74]

In that last regard, the ALJ accorded "great weight" to Dr. Kuchynski's December opinion, which the ALJ characterized as consistent with an RFC for sedentary work, and

---

[70] *Id*. at 397.

[71] *Id*.

[72] *Id*. at 24.

[73] *Id*.

[74] *Id*. at 25.

"lesser weight" to Dr. Kuchynski's "other opinions" and to "the State agency opinions."[75] To that point, the ALJ found that the two non-examining State agency consultants opined that Wish "retains the ability to perform at least light work."[76] Of significance here, one of the two State agency consultants referenced by the ALJ, Dr. Gary Hinzman, M.D., gave his opinion in February 2012 that Wish was capable of light work.[77] Accordingly, Dr. Hinzman's opinion came after the two opinions from Dr. Kuchynski at issue here, but in giving this opinion Dr. Hinzman, who did note Wish's fibromyalgia in his report,[78] also plainly noted that his functional opinion did not consider any of Dr. Kuchynski's functional opinions.[79]

The Commissioner argues that the ALJ gave a good reason for not according Dr. Kuchynski's earlier, more detailed November functional capacity opinion controlling weight - namely, that the November opinion was inconsistent with "her own opinion one month" later.[80] The Commissioner further argues that, contrary to Wish's assertion, *Gayheart* doesn't require the ALJ to "explicitly and separately" articulate on whether at the first level of analysis the treating source opinion is entitled to controlling weight, before then proceeding to the next level and determining what weight should be given to an opinion not assigned

---

[75] *Id*. at 26.

[76] *Id*.

[77] Tr. at 501-08.

[78] *Id.* at 501, 502, 506.

[79] *Id*. at 507.

[80] ECF # 21 at 19.

controlling weight.[81] Rather, the Commissioner contends, *Gayheart* mandates only the simple rule that good reasons be given for whatever weight that is ultimately assigned.[82]

While the Commissioner is unfortunately correct that a significant number of post-*Gayheart* cases excuse the failure of ALJ's to strictly adhere to the two-step analysis mandated by that decision as essentially harmless error, it would be a fundamental misreading of *Gayheart* to state that *Gayheart* does not require a distinct two-step analytical approach. The case authority cited above makes that clear.

That said, however, even if this case is considered under the more lenient rubric that requires no more than a statement of good reasons to support the assignment of less than controlling weight to a treating source opinion, the decision here nonetheless still falls short of that requirement in that the reason given by the Commissioner is not a "good reason." Specifically, while there are clearly differences in specificity between Dr. Kuchynski's detailed opinion in November and her less-detailed opinion a month later, the ALJ assumes, without any reasoned explanation for such an assumption, that this difference is obviously and solely due to a fundamentally changed and radically different view of Wish's functional capacity all within the span of one month, and all without any intervening medical event.

At best, such a significant unexplained assumption cannot be accepted as a good reason sufficient to justify to a reviewing court, and by extension to the claimant, why the highly detailed functional capacity opinion of a well-qualified treating source, trained in the

---

[81] *Id.*

[82] *Id.*

discipline at issue and supported by extensive treatment notes, should essentially be ignored in fashioning that claimant's RFC.  At worst, seizing on the mere difference in specificity in the two opinions, without more, as grounds for marginalizing the functional capacity opinion of a recognized specialist in the relevant field looks to be uncomfortably close to simply saying "gotcha" as the reason why a treating source opinion was handled the way it was here.[83]

## Conclusion

In sum, I find that the reason given for not affording the detailed November opinion controlling weight is not a "good reason" sufficient to support the assignment of significantly lesser weight to that opinion. Thus, the decision of the Commissioner is hereby reversed and the matter remanded for further proceedings consistent with this opinion. Further, the fact that the additional issues raised by Wish were not addressed here should not be understood as any judgment as to their merits.


IT IS SO ORDERED.


Dated: March 24, 2016                          s/ William H. Baughman, Jr.
                                                                United States Magistrate Judge

---

[83] The strength of the ALJ's reason is also weakened by the fact that the ALJ's attempt to bolster the validity of the later, less-detailed opinion by linking it with the opinions of the State agency reviewing sources fails to mention that one of those reviewers offered his opinion prior to the detailed November functional opinion and the other, as noted above, gave the opinion after November but did so in admitted ignorance of that opinion from the treating source. As such, the opinions of the State agency reviewers are not, of themselves and on this record, entitled to outweigh the opinion of a treating source.